1  V James DeSimone, SBN 119668
   Michael D. Seplow, SBN 150183
2  Michael Morrison, SBN 205320
   SCHONBRUN DESIMONE SEPLOW
3  HARRIS & HOFFMAN, LLP
   723 Ocean Front Walk
4  Venice, CA 90291
   Telephone: (310) 396-0731
5  Facsimile: (310) 399-7040

6  LAW OFFICES OF THOMAS W. FALVEY
   THOMAS W. FALVEY, SBN 65744
7  J.D. HENDERSON, SBN 235767
   301 North Lake Avenue, Suite 800
8  Pasadena, California 91101
   Telephone: (626) 795-0205
9
   Attorneys for Plaintiffs
10

11              UNITED STATES DISTRICT COURT
12             NORTHERN DISTRICT OF CALIFORNIA

13
   DUANE WATERS, DEBRA            )    Case No: CV 09-3983 BZ
14 TURNER and RUDY FAJARDO,       )
   on behalf of themselves, all others )    UNOPPOSED MOTION FOR
15 similarly situated and the general  )    PRELIMINARY APPROVAL OF
   public,                        )    CLASS ACTION SETTLEMENT
16                                )    AND PROVISIONAL
         Plaintiffs,              )    CERTIFICATION OF CLASS;
17                                )    MEMORANDUM OF POINTS
   vs.                            )    AND AUTHORITIES IN
18                                )    SUPPORT THEREOF
   AT&T SERVICES, INC. (formerly  )
19 SBC Services, Inc.) and DOES 1 )    Date: August 4, 2010
   through 10;                    )    Time: 10:00 a.m.
20                                )    Courtroom G
         Defendants.             )
21                                )
                                  )
22 _____ )

23      TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF

24 RECORD:

25      PLEASE TAKE NOTICE that on August 4, 2010 at 10:00 a.m[1]., or as soon

26 _____

27    1. Because this motion is unopposed, it is being set for a hearing on

28 shortened notice.
   _____

                                1

1  thereafter as the matter may be heard, in the United States District Court, Northern

2  District of California, Courtroom G, Plaintiffs Duane Waters, Debra Turner and

3  Rudy Fajardo, on behalf of themselves, the general public, and all others similarly

4  situated ("Representative Plaintiffs"), as proposed representatives of the class

5  Plaintiffs request be provisionally certified for settlement purposes, will and

6  hereby do move this Court for the following:

7

8      1.    Preliminarily and conditionally certifying the Class as described in

9          the proposed Settlement Agreement and Joint Stipulation Between

10          Plaintiffs and Defendant ("Settlement Agreement")[2] for purposes of

11          settlement;

12

13      2.    Provisionally approving Representative Plaintiffs as Class

14          Representatives;

15

16      3.    Provisionally approving Schonbrun DeSimone Seplow Harris &

17          Hoffman, LLP  and the Law Offices of Thomas W. Falvey as Class

18          Counsel;

19

20      4.    Preliminarily approving a settlement of claims for up to $17,000,000

21          (Seventeen Million Dollars) under the terms set forth in the

22          Settlement Agreement;

23

24      5.    Approving as to form and content the proposed Class Notice, Claim

25          Form and Exclusion Form, in the forms attached, respectively, as

26

---

27  [2]  Attached as Exhibit 1 to the Declaration of Michael D. Seplow In Support of

28  Plaintiffs' Motion for Order Preliminarily Approving Class Action Settlement ("Seplow Decl.").

Exhibits 1 to 4 to the Declaration of Michael D. Seplow, or in forms otherwise approved by the Court;

6.   Approving the method of Notice described in the Settlement Agreement and directing distribution of the Class Notice, Claim Form and Exclusion Form be mailed by first class mail to the Class members;

7.   Approving the appointment of CPT Group, Inc. as Claims Administrator and preliminarily approving costs of administration of the Settlement for an amount estimated to be approximately $25,000.00.

8.   Preliminarily approving the payment of "enhancement awards" in the amount of $25,000 to the Representative Plaintiffs Duane Waters, Debra Turner and Rudy Fajardo, with payments coming from the Settlement;

9.   Preliminarily approving the application for payment to Class Counsel of reasonable attorneys' fees and costs of Five Million One Hundred Thousand Dollars ($5,100,000) (30% of the Settlement);

10.   Preliminarily approving reimbursement of Class Counsel's costs, currently at a balance of approximately $25,000 from the Settlement; and

//
//

11. Setting a schedule for implementation of the terms of the Settlement Agreement, including a date for a hearing for Final Approval of the Settlement.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Michael D. Seplow in Support, along with the attached Settlement Agreement and Exhibits thereto, the proposed Order submitted herewith, all other records, pleadings, and papers filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this motion.

DATED: July 15, 2010
                    SCHONBRUN DESIMONE SEPLOW
                    HARRIS & HOFFMAN LLP

                    LAW OFFICES OF THOMAS FALVEY

_____

                    V. James DeSimone
                    Michael D. Seplow
                    Michael Morrison
                    Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  SUMMARY OF THE PROPOSED SETTLEMENT TERMS . . . . . . . . . . . 5

IV.   THE PROPOSED CLASS ACTION SETTLEMENT
      APPROVAL PROCEDURE. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    PRELIMINARY APPROVAL SHOULD BE GRANTED.. . . . . . . . . . . . 8

VI.   THE VALUE OF THE SETTLEMENT TO THE CLASS.. . . . . . . . . . . . 9

      1. The Proposed Settlement is Reasonable, Fair and
         Adequate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      2. The Proposed Notice Is Adequate and Meets Due
         Process Requirements . . . . . . . . . . . . . . . . . . . . . . 10

      3. The Costs of Administering the Settlement Are
         Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      4. The Requested Service Awards to the Representative
         Plaintiffs Are Reasonable and Routinely Awarded. . . . . . . . . . 12

      5. The Requested Awards for Class Counsel's Attorneys'
         Fees Costs Are Reasonable, Fair, and Appropriate Under
         the Common Fund Doctrine. . . . . . . . . . . . . . . . . . . . . 13

VII.  THE PROPOSED CLASS SHOULD BE CERTIFIED FOR
      SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.  The Proposed Class Meets All Of The Requirements
          Of Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          1. Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          2. Commonality . . . . . . . . . . . . . . . . . . . . . . . . . 17

          3. Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

          4. Adequacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      B.  The Proposed Class Meets The Requirements
          Of Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          a. Rule 23(b)(1) is satisfied . . . . . . . . . . . . . . . . . . . 20

          b. Rule 23(b)(3) is also satisfied . . . . . . . . . . . . . . . . . 20

i

1

VIII.   <u>CONCLUSION</u>   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Antonpulos v. North American Thoroughbreds, Inc.*
   Fed. Sec.L.Rep (S.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Boeing Co. v. Van Gemert*
   444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cook v. Niedert*
   142 F.3d 1004 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Crawford v. Honig*
   37 F.3d 485 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cullen v. Whitman Medical Corp.*
   197 F.R.D. 136 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Doyle v. AT&T Services, Inc. et al.*
   Case No. 08-CV-1275 JAH (Wmc) (C.D. Cal. 2010) . . . . . . . . . . . .   3, 16

*Dublin v. E.F. Hutton Group, Inc.*
   878 F.Supp 616 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dukes v. Wal-Mart Stores, Inc.*
   474 F.3d 1214 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gen. Tel. Co. of the Southwest v. Falcon*
   457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . .   10, 17, 19

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Huang v. AT&T Services, Inc. et al.*
   Case No. 06-CV-2238 DMS (Wmc) (S.D. Cal. 2008) . . . . . . . . . . . . . . 16

*Ingram v. Coca-Cola Co.*
    200 F.R.D. 685 (N.D. Ga. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Activision Securities Litigation*
    621 F.Supp. 415 (N.D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Activision Securities Litigation*
    723 F.Supp.1373 (N.D. Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Ampicillian Antitrust Litigation*
    526 F.Supp. 494 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Crazy Eddie Securities Litigation*
    824 F. Supp. 320 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Itel Securities Litigation*
    89 F.R.D. 104 (N.D. Cal. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Pacific Enterprises Securities Litigation*
    47 F.3d 373 (1995 U.S. App. LEXIS 2330) . . . . . . . . . . . . . . . . . . . . . . 15

*In re Safety Components International, Inc.*
    166 F.Supp.2d 72 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re S. Ohio Correctional Facility*
    175 F.R.D. 270 (S.D. Ohio 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Sumitomo Copper Litigation*
    74 F.Supp.2d 393 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Mayfield v. Dalton*
    109 F.3d 1423 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Maywalt v. Parker & Parsley Petroleum Co.*
    67 F.3d 1072 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Morris v. Lifescan, Inc.*
    54 Fed. 663 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Morton v. Valley Farm Transp., Inc.*
    WL 1113999 at 3 (ND. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Phillips Petroleum Co. v. Shutts*
        472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Roberts v. Texaco, Inc.*
        979 F. Supp. 185 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Shoff v. AT&T Services, Inc. et al.*
        Case No. CV07-3289 DSF (AGRx) (C.D. Cal 2009) . . . . . . . . . . . . . 3, 16

*Six (6) Mexican Workers v. Arizona Citrus Growers*
        904 F.2d 1301 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Smilow v. Southwestern Bell Mobile Systems*
        323 F.3d 32 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Valentino v. Carter-Wallace, Inc.*
        97 F.3d 1227 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Van Gemert v. Boeing Co.*
        516 F.Supp. 412 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Van Vranken v. Atlantic Richfield Co.*
        901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATE CASES**

*Dunk v. Ford Motor Co.*
        48 Cal.App 4th 1794 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Maria P. v. Riles*
        43 Cal.3d 1281 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Westside Cmty. for Indep. Living, Inc. v. Obledo*
        33 Cal.3d 348 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATUTES**

California Code of Civil Procedure
        § 1021.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California Labor Code
   § 218.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   § 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Rule of Civil Procedure
   23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, , 17
   23 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19
   23 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20
   23(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
   23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21
   23 (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16
   23 (e)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   23 (e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**OTHER AUTHORITIES**

*Manual for Complex Litigation* (3rd ed. 1995)
   § 21.312 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   § 21.63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   § 21.632 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   § 30.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moore's Federal Practice* (3rd ed.)
   § 23.45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

*Newberg on Class Actions* (4th ed. 2002)
   § 8.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   § 11.23-11.24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   § 11.25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10
   § 11.26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   § 14.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs seek preliminary approval of a class action settlement where Defendant AT&T Services, Inc. has agreed to pay up to $17,000,000 to settle the claims of class members for overtime, missed meal and rest breaks and related penalties, to compensate class counsel and the named representatives for their time and effort, and to administer the settlement. The settlement, which was the result of arms length negotiations in a contested dispute, is an eminently fair and reasonable result as class members are eligible to receive approximately $126.00 for every week they were employed by Defendant AT&T Services in the covered positions during the relevant class period.

Plaintiffs Duane Waters, Debra Turner and Rudy Fajardo, on behalf of themselves, the general public, and all others similarly situated ("Representative Plaintiffs"), seek preliminary approval of the proposed class action settlement of wage and hour claims with Defendant AT&T Services, Inc. (formerly SBC Services, Inc.) ("Defendant").  Plaintiffs also seek approval as to the form and content of the proposed Class Notice, Claim Form and Exclusion Form.  Through this class action settlement, the parties are resolving all of the claims against Defendant in the operative complaint, and in so doing are benefitting many of Defendant's employees as well as benefitting Defendant and the judicial system by avoiding multiple actions.

The putative Class is defined as follow:

**All persons who work or worked for AT&T Services, Inc. in the State of California as Senior Analysts (or Senior IT Analysts or Senior QC Test Analysts) or Senior Database Administrators while classified by  AT&T Services, Inc. as exempt from overtime**

**requirements at any time from August 27, 2005  through the date of preliminary approval of the Settlement.**

The proposed class action settlement concerns claims by Plaintiffs that they and the Class were mis-classified as exempt from state and federal overtime law and not paid compensation for overtime hours they worked, including interest and penalties.  Plaintiffs also allege Defendant failed to provide meal periods and failed to authorize and permit rest periods for the proposed class members.

Defendant has agreed to make a Maximum Settlement Payment of up to $17,000,000 (henceforth, "Maximum Payment"), plus the employer's share of payroll taxes, to Plaintiffs, Class Members, Class Representatives, Class Counsel, the Claims Administrator, and the State of California Labor Workforce and Development Agency, in full satisfaction of the claims as more specifically described in the Settlement Agreement.

As discussed below, the proposed Settlement Agreement was reached after an in-depth investigation, extensive informal discovery, arms-length, non-collusive negotiations, and when negotiations appeared to reach an impasse, was the result of a mediator's proposal by a well-respected mediator.  The Settlement Agreement satisfies all of the criteria for preliminary settlement approval and falls well within the range of reasonableness.  Defendant has agreed to join,  and therefore does not oppose, Plaintiffs' Motion for Order Preliminarily Approving Class Action Settlement.  It is well within the discretion of this Court to grant preliminary and conditional approval of the proposed Settlement. The Court should approve the settlement because it is eminently fair and reasonable.

Accordingly, Plaintiffs request that the Court grant preliminary approval of the proposed Settlement, provisionally approve and certify a settlement class, order the distribution of the Class Notice, Claim Form and Exclusion Form, and schedule a final approval hearing.

## II. **PROCEDURAL HISTORY**

Plaintiffs Duane Waters and Debra Turner, formerly employed as Sr. Analysts (also known as Sr. IT Analysts), filed this class action complaint on August 27, 2009 in the United States District Court for the Northern District of California alleging violations of both California law and the Fair Labor Standards Act ("FLSA"). On September 16, 2009, Plaintiffs filed a First Amended Complaint which added Rudy Fajardo, a former Sr. Database Administrator, as a named plaintiff. Defendant filed its Answer to the First Amended Complaint on October 28, 2009.

After participating in the early meeting of counsel, the parties agreed to stay formal discovery and participate in a private mediation, similar to the approach that was taken in the *Doyle* and *Shoff* cases.[3] Thereafter, the parties agreed to participate in informal discovery in which it was agreed that surveys were to be sent to each and every one of the 667 putative class members (which included 606 Sr. Analysts and 61 Sr. Database Administrators). Defendant also produced data and documents regarding job titles, claimed overtime hours, work weeks and termination dates and payroll data for each class member. Class Counsel developed detailed questionnaires ("surveys") that were sent to the Class Members. Plaintiffs' counsel received survey responses from approximately 130 Sr. Analysts and approximately 30 surveys from Sr. Database Administrators, including extensive written comments by class members. Additionally, Plaintiffs' counsel called each class member who provided a survey response and conducted

3. *Doyle v. AT&T Services, Inc.* and *Shoff v. AT&T Services Inc.* were, like here, class actions on behalf of allegedly mis-classified IT employees. Plaintiffs' counsel here also represented the *Doyle* and *Shoff* class members. In October 2008, *Shoff*, which involved approximately 800 class members, settled for $16 million. In March 2010, *Doyle*, which involved approximately 641 class members, settled for $10.5 million.

1  interviews with scores of class members.  Based on these surveys and interviews,

2  Plaintiffs' counsel compiled a detailed database of information concerning the job

3  duties and work hours of the class members.  *See* Seplow Decl., ¶ 3.

4       Class Counsel investigated further by reviewing and analyzing Defendant's

5  documents, including job descriptions from the job titles at issue in this case.

6  Class Counsel also analyzed extensive spreadsheets and other data provided by

7  Defendant, including badge swipe data from each of Defendant's California

8  facilities, security event logs from each of Defendant's California facilities, and

9  extensive payroll and employee data as to each and every class member.  There

10 was an enormous amount of data which took a great deal of time and effort to

11 analyze and understand. *Id* at ¶ 4.

12      Class Counsel also retained the services of an expert forensic accountant and

13 worked closely with him to analyze the data provided by Defendant, as well as the

14 information contained in over 150 survey responses.  The forensic accountant

15 produced a detailed analysis of his findings which was utilized extensively in

16 preparation for the mediation. *Id* at ¶ 5.

17       Prior to the mediation session, Class Counsel prepared a 38 page mediation

18 brief, which contained extensive and detailed analyses of liability, class

19 certification and damages issues.  Class Counsel contends that their analysis

20 supported Plaintiffs' allegations that Defendant's designation of exempt status for

21 the Senior Analysts and Senior Database Administrators was in error, and that

22 employees were denied meal and rest periods.  Plaintiffs' counsel contends that

23 their position at mediation was supported by their statistical expert's analysis of

24 Defendant's documents and putative class member questionnaire responses. *Id* at

25 ¶ 6.

26      Defendant denied and continues to deny any liability or wrongdoing of any

27 kind and further contends that Defendant has complied with the California Labor

28

4

Code, the California Business and Professions Code, the applicable Industrial Welfare Commission Wage Orders, and similar federal laws, including but not limited to the federal Fair Labor Standards Act.  Defendant contends that case law supports its position that the employees at issue are exempt and also that the case would not be certified for a class action due to the predominance of individualized issues. *Id* at ¶ 7.

On May 12, 2010, the Counsel for all parties participated in an all day mediation at the San Francisco offices of well-respected class action mediator, Mark Rudy. At the conclusion of the mediation, the parties were at an impasse. Thereafter, Mr. Rudy proposed a mediator's compromise to resolve this case and gave each side one week to consider the proposal.  On May 19, 2010, the mediator informed both sides that his proposal had been accepted. *Id* at ¶ 8.  Thereafter, counsel for the parties worked on drafting an initial memorandum agreement and a more detailed proposed Settlement Agreement, subject to the Court's approval. As part of the Settlement Agreement, Defendant has provided to Plaintiffs' counsel  a declaration under oath which sets forth the number of compensable work weeks covering the period from August 27, 2005 to May 19, 2010, and explains the process by which the number of compensable work weeks was determined. The declaration also estimates the number of additional compensable work weeks through July 26, 2010.  According to this declaration, there will be approximately 93,086 compensable work weeks as of July 26, 2010. *Id* at ¶ 9.[4/]

## III.  SUMMARY OF THE  PROPOSED SETTLEMENT TERMS

The basic terms of the proposed Settlement Agreement are as follows:

The Maximum Payment:  Under the Settlement, if all Class Members file

---

4.  By the date of preliminary approval hearing, the number of workweeks is expected to be slightly higher.

valid and timely claims the Maximum Payment will be Seventeen Million Dollars ($17,000,000). This includes service payments to the Class Representatives, attorneys' fees to Class Counsel, plus reasonable litigation costs, payment to the Claims Administrator to administer the Settlement, $35,000 to the State of California Labor Workforce and Development Agency ("LWDA"); and payment of the timely and valid claims of the Class Members.

Attorneys' Fees: Plaintiffs request, and Defendant does not oppose, an award of attorneys' fees of thirty percent (30%) of the Maximum Payment (or $5,100,000) to Class Counsel for all of the work already performed in this case and all work remaining to be performed.

Costs: Plaintiffs request, and Defendant does not oppose, payment to Class Counsel of their reasonable litigation costs (approximately $ 25,000) from the Maximum Payment for costs and expenses incurred by Class Counsel in prosecuting the Action and in implementing the terms of this Settlement.

Enhancement to Class Representatives: Plaintiffs request, and Defendant does not oppose, service payments to each of the Class Representatives, in the amount of $25,000 from the Maximum Payment as an enhancement for their service as Class Representatives, in addition to any payment they may otherwise receive as Class Members.

Claims Administrator: CPT Group, an experienced class action claims administrator, will administer the Settlement, at a cost of approximately $25,000.

## IV. THE PROPOSED CLASS ACTION SETTLEMENT APPROVAL PROCEDURE

Plaintiffs request that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement Agreement and Plaintiffs' application for payment of Class Counsel's attorneys' fees and costs.

The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness" and, thus, whether notice to the Class of the terms and conditions of the Settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* Alba Conte and Herbert Newberg, *Newberg on Class Actions*, (4th ed 2002) ,§11:26.

As set out in more detail below, the settlement herein is based on arms-length negotiations that were informed by significant discovery, investigation and the evaluation of wage and compensation and meal and rest period data for the class. The negotiations included a full-day mediation session conducted by a well-respected class action mediator, Mark Rudy, which resulted in a mediator's proposal that was accepted by the Parties one week later. Furthermore, the Settlement provides all the required due process protections to the Class and a substantial monetary recovery. In sum, the proposed Settlement is fair, reasonable, and adequate.

Judicial interpretations of Federal Rule of Civil Procedure 23 ("Rule 23") have led to a defined procedure and specific criteria for settlement approval of class action settlements, which is described in the Manual for Complex Litigation, Third (Fed. Judicial Center 1995) ("*Complex Manual*") § 30.41. The class action settlement approval procedure has three distinct steps:

1. Preliminary approval of the proposed settlement after submission of a written motion for preliminary approval, the proposed class settlement, and the proposed class notice;

2. Dissemination of mailed and/or published notice of the settlement to all affected Settlement Class members; and

3. A formal fairness hearing, or final settlement approval hearing, at which Settlement Class members may be heard regarding the settlement, and at which

evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

This procedure, commonly used by California courts and endorsed by the leading class action commentator, Professor Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of Settlement Class members' interests.  *See*, *Newberg on Class Actions, supra,* § 11.23-11.24.

Plaintiffs propose three distinct steps for approval of this class action settlement hearing at which Class members may be heard regarding:

1. Preliminary approval of the proposed Settlement after submission of a written motion for preliminary approval, the proposed Class Settlement, and the proposed Class Notice;

2. Mailing notice of the settlement to all affected Class members; and

3. A final settlement approval hearing regarding the proposed Settlement, and at which evidence and argument concerning the fairness, adequacy, and  reasonableness of the proposed Settlement is presented.

This procedure is endorsed by the nation's leading class action commentator, Professor Newberg, for safeguarding Class members' procedural due process rights and enabling the court to fulfill its role as the guardian of the class' interests.  *See* Newberg, *supra* at 4d § 11.23-11.24; *Complex Manual, supra* at §21.63.

## V.  **PRELIMINARY APPROVAL SHOULD BE GRANTED**

As discussed below, the Settlement is fair, adequate, reasonable, and appropriate, meets all of the requirements of Rule 23, and should be approved.

The proposed Settlement was reached one week after a full-day mediation session which required extensive preparation.  Prior to the mediation session, the

parties engaged in extensive discovery, which included an analysis of payroll and timekeeping data and a detailed questionnaire sent to all putative class members. Plaintiffs' liability and damages evaluation was premised on, among other things, a careful and extensive analysis of the written responses by over 150 class members to the questionnaire, and documents and data produced by Defendant.

In reaching settlement, Class Counsel relied on their respective substantial litigation experience in similar employment class actions (including two similar actions against the same defendant involving IT employees as well as a third predecessor action against AT&T which was prosecuted by another well-respected employment class action law firm), and a thorough analysis of the legal and factual issues presented in this case.  A well-respected and experienced mediator (Mark Rudy) with expertise in the resolution of class action disputes facilitated the settlement.  The Settlement is fair, reasonable, adequate, and appropriate.

# VI.  THE VALUE OF THE SETTLEMENT TO THE CLASS

## 1.  The Proposed Settlement is Reasonable, Fair, and Adequate.

This Settlement provides for substantial benefits to all Class Members. The settlement amount is, of course, a compromise figure, taking into account risks related to certification, liability, and damages.  It is based on a thorough investigation, including formal and informal written discovery pertaining to Defendant's policies, practices, and records regarding employee compensation and employee job duties.

Before approving a class action settlement, a court must find the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. Proc. 23 (e)(1)(C).  At the preliminary approval stage, the court has broad powers to determine whether the proposed settlement is fair, reasonable, and adequate under the circumstances of

the case. *See* Conte & Newberg, §11:25. For preliminary approval, a court makes an initial evaluation of the fairness, reasonableness, and adequacy of the proposed settlement on the basis of information already known, supplemented as necessary by briefs, motions, or information presented by the settling parties. *See Complex Manual, supra* at §21.632. A court must ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The court must compare the terms of the compromise with the likely rewards of litigation. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2nd Cir. 1995).

### 2. The Proposed Notice Is Adequate and Meets Due Process Requirements.

In order to protect the rights of absent class members, a court must provide class members the best class action settlement notice practicable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner. It does not guarantee any particular procedure but rather requires only notice reasonably calculated to apprise interested parties of the pendency of the action affecting their interests and an opportunity to present their objections. Notice that meets this standard provides due process. *See Phillips*, 472 U.S. at 812.

Preliminary approval of the settlement will enable notice to go out to Class Members in the best practicable manner calculated to ensure that class members are alerted to the terms of the Settlement and allowed to protect their rights under

it. The Class Notice informs Class Members about the terms of the Settlement and explains the payments to which they are entitled under the Settlement. The Class Notice summarizes the terms and conditions of the Settlement in an informative and coherent manner. It informs Class Members that the final settlement approval decision has yet to be made and that a final approval hearing has been scheduled, informs them of their right to object to the adequacy of the Class Representatives and the Settlement, and explains the procedure for filing and appearing to present such objections. The Class Notice also provides each Class Member a Dispute Resolution Procedure in the event that the eligibility or work weeks are disputed and allows each Class Member to opt out of the settlement and pursue his or her claims on an individual basis. The Class Notice also clearly states that the Settlement does not constitute an admission of liability by Defendant, and recognizes that the Court has not ruled on the merits of the action. Accordingly, the Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement notice disseminated under authority of the Court. Fed. R. Civ. P. 23(e)(2); 23(e); Conte & Newberg, §8:21; *Complex Manual, supra* at §21.312. The procedures stipulated to by the parties fully protect the rights of Class Members and warrant preliminary approval.

### 3. The Costs of Administering the Settlement Are Reasonable.

The Claims Administrator shall be paid for the costs of administering the Settlement from the Maximum Payment amount. The estimate for the costs of administration is approximately $25,000.00. This estimate includes the required tax reporting on the settlement amounts, including the issuing of W2 and 1099 forms, as well as calculation of employee withholding taxes and the employer payroll taxes for defendant to be remitted to the tax authorities. Prior to the Final Approval Hearing, the Claims Administrator shall provide the Court and all

1    counsel for the Parties with a statement detailing the costs of administration of the

2    Settlement.  The Parties have agreed to cooperate in the settlement administration

3    process and to make all reasonable efforts to control and minimize the costs and

4    expenses incurred in the administration of the Settlement.

5

6    **4. The Requested Service Awards to the Representative Plaintiffs**

7    **Are Reasonable and Routinely Awarded.**

8    Plaintiffs request that the Court approve a service award of $25,000 to each

9    Representative Plaintiff, for their time, effort, and the risks they undertook in

10   participating in this litigation.  This amount is reasonable given the total

11   settlement amount and the Representative Plaintiffs' extensive efforts in pursuing

12   this case.

13   These awards have substantial precedent.  "Courts routinely approve

14   incentive awards to compensate named plaintiffs for the services they provide and

15   the risks they incurred during the course of the class action litigation." *Ingram v.*

16   *The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In Re S. Ohio*

17   *Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) (approving $300,000

18   payment to each class representative plaintiff in employment case settling before

19   class certification); *see also Roberts v. Texaco*, 979 F. Supp. 185, 203-04

20   (S.D.N.Y. 1997) (approving incentive payments of up to $85,000 for named

21   plaintiffs in employment case settling prior to class certification).

22   The factors courts use in determining the amount of service awards include

23   (1) a comparison between the service awards and the range of monetary recovery

24   available to the class; *see, e.g., Ingram*, 200 F.R.D. at 694; *Roberts*, 979 F. Supp.

25   at 204; (2) time and effort put into the litigation; *see, e.g., Van Vranken v. Atlantic*

26   *Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *Cook v. Niedert*, 142 F.3d

27

28

1004, 1016 (7th Cir. 1998); and (3) risks of retaliation, *see, e.g., Roberts*, 979 F.

Supp. at 202; *Cook*, 142 F.3d at 1016.

All of the above factors, when applied to this case, support the service awards requested here. The service awards of $25,000 for each of the Representative Plaintiffs are intended to compensate them for the critical role they played in this case and the substantial time, efforts, and possibly career-ending risks they undertook to help secure the result obtained on behalf of the Class. Class Counsel therefore fully supports the enhancement payments as being eminently fair and reasonable, and Defendant has agreed not to oppose them.

### 5.  The Requested Awards for Class Counsel's Attorneys' Fees and Costs Are Reasonable, Fair, and Appropriate Under the Common Fund Doctrine.

Class Counsel request that the Court approve reimbursement of their costs incurred in prosecuting this matter, approximately $ 25,000.00, from the Maximum Payment. Defendant does not oppose this request. Class Counsel also request that the Court approve an award of attorneys' fees in the amount of 30% of the Maximum Payment to Class Counsel. Defendant does not oppose this request. As discussed below, these amounts are fully warranted in this case and are well within the range awarded in similar cases.

The Plaintiffs in the settlement of this unpaid wages class action are entitled to payment of attorneys' fees and costs. *See* California Labor Code §§218.5, 1194; California Code of Civil Procedure §1021.5(a); *Maria P. v. Riles,* 43 Cal. 3d 1281, 1290-91 (1987); *Westside Cmty. for Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348, 352-53 (1983) (attorney fee awards may be justified even where a lawsuit never reached final judgment).

1    Here, Plaintiffs seek an award of Class Counsel's attorneys' fees and costs

2    under the common fund doctrine, which has been recognized by federal courts and

3    is customarily used in awarding fees and costs in settlements of wage and hour

4    class actions. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A]

5    lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee

6    from the fund as a whole."); *see also Six (6) Mexican Workers v. Arizona Citrus*

7    *Growers* (9th Cir. 1990) 904 F.2d 1301, 1311.

8    The common fund doctrine is grounded in the principles of quantum meruit

9    and unjust enrichment. *See* Conte & Newberg, §14:6. The doctrine prevents the

10   unjust enrichment of the absent members of the class at the expense of the

11   attorneys and class representative, who have assumed the frontline risk of

12   prosecuting the case. *Id.* The common fund – or "percentage" – method offers the

13   advantage of helping to ensure that the fee award will provide an incentive both

14   for attorneys to take on risky cases where the benefits on recovery are dispersed,

15   and to settle the case rather than litigate it fully to increase a "lodestar" award that

16   is solely a function of billable hours, and rife with adverse incentives to protract

17   the case. *Dublin v. E.F. Hutton Group, Inc.* 878 F. Supp 616, 621 (S.D.N.Y.

18   1995) ("the percentage method offers the advantage of helping to ensure . . . that

19   attorneys will have an incentive to settle the case rather than to litigate it fully in

20   order to increase the lodestar.").

21   In light of the challenges presented to Class Counsel in this case and the

22   closely circumscribed scope of the settlement terms, a thirty percent fee award is

23

24

25

26

27

28

1  appropriate.[5/]  As summarized in *Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396

2  (S.D.N.Y. 1999):

> No one expects a lawyer whose compensation is contingent on
> the success of his services to charge, when successful, as little
> as he would charge a client who in advance of the litigation has
> agreed to pay for his services, regardless of success.  Nor,
> particularly in complicated cases producing large recoveries, is
> it just to make a fee depend solely on the reasonable amount of
> time expanded.

7  Accordingly, Class Counsel's fee request is fair and reasonable given that

8  Class Counsel's effectiveness in prosecuting this case has translated into the

9  following benefits, tangible and intangible, for the Class:

10  (1)   A Settlement of $17,000,000 (Seventeen Million Dollars);

11  (2)   Class Members will receive money now rather than waiting perhaps

12        a number of years for a settlement or verdict (or worse, not

13        receiving any benefits at all);

14  (3)   The rights of individuals, whose cases would likely not have been

15        individually prosecuted, were upheld;

---

18  5. Numerous federal courts have awarded attorney fees equal to or higher
than 33 1/3 percent of the settlement. *See, e.g., In re Pacific Enterprises
Securities Litigation*, 47 F.3d 373, 379 (1995 U.S. App. LEXIS 2330) (upholding
award of 33 1/3% of $12 million settlement); *Morris v. Lifescan, Inc.*, 54 Fed.
Appx. 663 (9th Cir. 2003) (affirming award of 33% of 14.8 million settlement);
*Antonpulos v. North American Thoroughbreds, Inc.*, Fed. Sec.L.Rep. (CCH),
¶96,058  (S.D. Cal. 1991) (33 1/3 of $3.1 million); *Cullen v. Whitman Medical
Corp.*, 197 F.R.D. 136, 146-47 (E.D. Pa 2000) (1/3 of $5.97 million); *In re Crazy
Eddie Securities Litigation*, 824 F. Supp. 320, 326-327 (E.D.N.Y. 1993) (33.8% of
$42 million); *In re Safety Components International, Inc.*, 166 F. Supp.2d 72, 109
(D.N.J. 2001) (1/3 of net $4.31 million); *In re Activision Securities Litigation*, 723
F. Supp. 1373, 1375 (N.D. Cal. 1989)  (awarding 32.8% of $42 million); *In re
Ampicillian Antitrust Litigation*, 526 F.Supp. 494 (D.D.C. 1981) (awarding 45%
of $7.3 million settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420
(S.D.N.Y. 1981) (awarding 36% of the settlement fund).

(4)    There has been, and will continue to be, an increased awareness on the part of Class Members and those with whom they associate of their legal rights in the workplace under California law.

Class Counsel therefore requests that the Court grant Plaintiffs' request that Class Counsel's costs be reimbursed from the Settlement Payments and that Class Counsel receive thirty percent of the Settlement, or $5,100,000.[6]

## VII.   THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES.

A class action may not be dismissed, compromised, or settled without the approval of the court. *See* Fed. R. Civ. Proc. 23(e). Plaintiffs submit that this action meets all of the prerequisites for certification as a class action.

"A court may certify a class if the plaintiff demonstrates that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied." *Morton v. Valley Farm Transp., Inc.* (ND. Cal. 2007) 2007 WL 1113999 at 3.; *see also Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F.3d 1227, 1234.[7]

---

6. District courts in similar lawsuits against Defendant have previously approved attorneys fees of thirty percent of the settlement amount. *See Huang v. AT&T Services, Inc.,* (S.D. Cal.) (No. 06-CV-2238 DMS (Wmc)); *Shoff v. AT&T Services, Inc.* (C.D. Cal.) No. CV 07-3289 DSF (AGRx); *Doyle v. AT&T Services, Inc.* (S.D. Cal.) No. 08- CV-1275 JAH (Wmc). *See* Seplow Decl. at ¶ 11.

7. It is well established that trial courts should use a lower standard for determining the propriety of certifying a settlement class, as opposed to a litigation class. *Dunk v. Ford Motor Co.,* 48 Cal. App. 4th 1794, 1807 (1996). Here, Defendant contends that class certification is not appropriate if this case were to be litigated. However, Defendant joins Plaintiffs in agreeing that conditional certification is appropriate, for settlement purposes only, under the lower standard applicable to the certification of settlement classes.

A. **The Proposed Class Meets All Of The Requirements Of Rule 23(a)**

Federal Rule of Civil Procedure 23 ("Rule 23"), paragraph (a), requires that the following four factors must be met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. In short, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy. The proposed Class easily meets all of the requirements of Rule 23.

**1. Numerosity**

Defendant has represented that the number of class members is approximately 671. Joinder of almost 700 class members would, of course, be impracticable, and thus the numerosity requirement is easily met. *See In re Itel Sec. Litg.* (N.D. Cal. 1981) 89 F.R.D. 104, 111-112.

**2. Commonality**

Commonality requires only a common question of law or fact. "A class has sufficient commonality if there are questions of law which are common to the class." *Hanlon, supra,* 150 F.3d at p. 1019. "In the Ninth Circuit, the commonality requirement has been 'construed permissively,' and may be satisfied by either 'shared legal issues with divergent factual predicates,' or 'a common core of salient facts coupled with disparate legal remedies.'" *Morton, supra,* at 4 [*citing Hanlon, supra*].

Plaintiffs alleged companywide corporate practices and policies to avoid required overtime payments, to deny meal and rest periods, and to fail to make

meal and rest periods available, all tied to job misclassifications resulting in non-exempt positions being classified exempt.  Defendant denies all charges and maintains that no laws or regulations were broken.  The proposed class  involved common questions of law – namely whether the class members were all misclassified as non-exempt employees during the relevant class period. The parties have agreed to settle this case for $17,000,000.  Under such circumstances, Plaintiffs have satisfied the commonality requirement for class certification. *Dukes v. Wal-Mart Stores, Inc.* (9th Cir. 2007) 474 F.3d 1214.

The following questions of fact and law plainly support the commonality requirement:

- Has defendant failed to pay overtime for hours worked?
- Has defendant failed to provide required meal periods?
- Has defendant failed to provide required rest periods?
- Has defendant misclassified jobs as "exempt" from overtime?
- Do defendant's practices, as stated, constitute an unfair business practice?
- Did defendant convert class member's wages?
- Did defendant fail to pay all wages due in a timely fashion when class members left defendant's employ?

### 3. Typicality

Typicality and commonality requirements "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon* 457 U.S. 147, 157 n.3 (1982) .  The typicality requirement attempts to ensure that the representative party's interests are substantially aligned with those of the absent class members. *Hanon v. Dataproducts Corp.* 976 F.2d 497, 508 (9th Cir. 1992).  The typicality requirement is satisfied if the representative claims arise from the same events, practice or conduct and are based on the same legal theory as those of other class members.  The Ninth Circuit has held that a class representative's claims meet

the typicality requirement if they are reasonably coextensive with those of the class even if the facts and legal theories are not identical. *Hanlon, supra* at pp. 1019-1020.

Here the legal theories raised by Plaintiffs are identical for all class members. Individual differences as to hours worked by each employee do not diminish typicality, as typicality does not require a complete identity of the claims. As with commonality, it has been specifically held that differences in damages will not destroy typicality. *In re Activision Sec. Litg.* (N.D. Cal. 1985) 621 F.Supp. 415, 428.

### 4. Adequacy

Because class members who are not named parties are bound by a judgment, due process is satisfied only where the absent class members' interest are adequately protected by the representative class members. *Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir. 1994). The test is whether the named plaintiffs have interests that conflict with, or are antagonistic to, the interests of the other class members. *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997). No such conflict of interest exists here. The named plaintiffs each have an interest in proving liability against defendant for each of the claims alleged in the Complaint, and this interest is identical to the interest of each absent class member. Further, Class Counsel have significant experience representing both statewide and nationwide classes of employees in wage and hour litigation, and have reached an adequate settlement of this class action. Seplow Decl., ¶¶ 10-11.

Thus all of the requirements of Rule 23(a) have been met.

## B.   The Proposed Class Meets The Requirements Of Rule 23(b)

Once the four requirements of Rule 23(a) have been met, the Court must determine whether one of the requirements of Rule 23(b) has been met.  Rule 23(b) provides that an action may be certified as a class action if subdivision (a) is satisfied and in addition, the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### a.  Rule 23(b)(1) is satisfied

A class action may be certified in the Court finds that separate actions create a risk of inconsistent adjudications establishing incompatible standards of conduct.  Here the risk of a multiplicity of actions is apparent, and thus Rule 23(b)(1) is satisfied, which is sufficient.

### b.  Rule 23(b)(3) is also satisfied

The Court could also certify pursuant to Rule 23(b)(3).  Common questions predominate.  The courts will find a predominance of class issues under Rule 23(b)(3) if:

> The substantive developments of class members' claims require the same proof for each class member; The proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests; The resolution of an issue common to the class would significantly advance the litigation; One or more common issues constitute significant parts of each class members individual cases; The common questions are all central to the members claims; The same theory of liability is asserted by or against all class

members; and All defendants raise the same basic defenses against all class members.

Moore's Federal Practice, 3d Ed. § 23.45[1].

In this case the claims, proof, questions of law, and majority of questions of fact are identical for the class members, including alleged job misclassification, failure to pay overtime wages, and failure to provide meal and rest periods. All members of the class have a mutual interest in proving defendant's liability. Once liability is established, the litigation as to each class member would be substantially advanced, leaving, in fact, only a calculation of wages due, which is what the law requires of every employer. Thus there is no question that common questions of liability are central to the claims of each member.

Courts generally find the predominance standard to be satisfied, even where individual damages issues remain. *Smilow v. Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32, 40 (1st Cir. 2003). Clearly, common issues of fact and law predominate over individual issues and, given the size of the class, including of each sub-class, the class action device is a superior method of adjudicating this controversy.

//
//
//
//
//
//
//
//
//
//

21

## VIII. **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval to the proposed Settlement Agreement, including the service awards for the Representative Plaintiffs, reasonable attorneys' fees and costs of Class Counsel, and the form and content of the Class Notice and the Claim Form.  Plaintiffs request that the Court also set a schedule for implementation of the terms of the Settlement Agreement.


DATED: July 15, 2010                   SCHONBRUN DESIMONE SEPLOW
                                       HARRIS & HOFFMAN LLP

                                       LAW OFFICES OF THOMAS FALVEY


                                       _____
                                       V. James DeSimone
                                       Michael D. Seplow
                                       Attorneys for Plaintiffs

22